[redacted]

**UNITED STATES v. FULLER et al.**

District Court, N. D. New York.

Sept. 7, 1943.

[redacted]

Irving J. Higbee, U. S. Atty., of Syracuse, N. Y. (Amos W. W. Woodcock, Sp. Asst. to Atty. Gen., of counsel), for Government.

Nathan H. Blitman, of Syracuse, N. Y. (Robert J. Fitzsimmons and John J. Mooney, both of New York City, of counsel), for defendants.

BRYANT, District Judge.

The defendants are charged by indictment with having conspired to violate Section 276b, 40 U.S.C.A. They demur and move to quash on the grounds that the indictment, on its face, is insufficient in law and does not state a cause of action.

Defendant Bird was the master mechanic of the contractor for the construction of the Syracuse Air Base, a public work of the United States. He was fully authorized to hire and discharge workers. Defendants Fuller, Johns and Stephens were officers and business agents of Local Union 545, International Union of Operating Engineers. Allegedly defendant Sanders was an assistant of defendant Fuller. The contractor authorized Bird to hire the operating engineers and oilers through said Union. Thereupon he made an agreement with the three Union defendants that he would employ, and continue in employment, only such engineers and oilers as the three Union defendants would approve. Concededly, the Union did not have among its membership the required number of engineers and oilers. Bird, who was a member of the Union, knew this at the time of the making of the agreement. The Union defendants recruited workers through the permit system. They required every non-member worker to pay $2 per week if employed as an oiler and $2.50 per week if an engineer. Clearly the defendants expected these fees to be paid weekly out of the compensation the workers were entitled to receive. Defendant Sanders received the fees, from those who came to Union Headquarters and paid, and issued weekly permits. Union stewards, under instructions from the defendants, went among the non-member workers who had not paid and demanded and received payment. They made those workers believe they would be discharged if payments were not forthcoming. This belief was well founded because Bird, the contractor's authorized agent, had so agreed. These permit workers were not allowed to join the Union.

The question to be decided is whether an agreement, between the authorized agent of an employer and Union officials, whereby workers were compelled to pay a part of their compensation to a Local Union of which they were not and could not become members, for the privilege of working on a war project, and after employment were compelled, under threat of discharge, to continue to pay, constitutes a conspiracy to violate said Section 276b. The Statute is: "Whoever shall induce any person employed in the construction, prosecution, or completion of any public building, public work, or building or work financed in whole or in part by loans or grants from the United States, or in the repair thereof to give up any part of the compensation to which he is entitled under his contract of employment, by force, intimidation, threat of procuring dismissal from such employment, or by any other manner whatsoever, shall be fined not more than $5,000, or imprisoned not more than five years, or both."

In United States v. McGraw, D.C., 47 F. Supp. 927, I overruled a demurrer to an indictment wherein the facts were similar to the present facts. Since that decision the Court of Appeals of the Third Circuit (United States v. Laudani, 134 F.2d 847)

has, by a divided court, quashed an indictment based on facts quite similar to the facts here present. The main difference is that in the Laudani case the foreman, without the knowledge, sanction or approval of the employer, obtained payments from workers through threats of dismissal, and in the present case Union officials, with the knowledge, sanction and backing of the employer's foreman who was authorized to hire and discharge, demanded and received, as a condition precedent to the right to work, a part of the wages the workers were entitled to receive, and after employment continued to obtain these payments under "threats of procuring dismissal".

A lower court should, and naturally does, give careful and serious study to the decisions of Appellate Courts of other Circuits. After doing this, I find myself unable to accept the Laudani case as an authority here. I cannot narrow the statute to the confines of that case.

██ The purpose of the statute is to protect workmen engaged on public projects from being compelled, through means stated in the statute, to give up any part of the compensation to which they are entitled under their contract of employment. The wages, which workmen on public projects are entitled to receive, are based upon a broader foundation than a contract between employer and employee. The right to receive the prevailing wage is founded on a contract, made for the workman's benefit and protection, between the employer and the United States. The employer is merely a conduit through which this right passes to the workmen. If workmen do certain work, on a public project, they are entitled to receive by provision of law certain sums out of the appropriation for that particular public work. This prevailing wage cannot be diminished. These workers have rights to the prevailing wage which they cannot contract away. United States v. Morley Construction Co., 2 Cir., 98 F.2d 781. The Statute in question was passed for the sole purpose of giving further protection to those rights. It was found that workmen were too frequently induced, through means set forth in the statute, to give up a part of their pay. In order to put a stop to this practice a criminal statute was passed. To limit the salutary provisions of the Act to employers only does seem "to emasculate an important criminal statute".

██ A study of the history of the passage of the statute convinces me that, even though much of the testimony and discussions had to do with "kick back" to employers, the legislators were determined to stop the mulcting of public project workers by anyone using the means stated in the statute. The broader purpose is clearly expressed by the language of the law. The words "anyone" in the title and "whoever" in the text have such universally understood meanings that they are "embodied in the maxim—expressum facit cessare tacitum". A limitation of those words would not only make other words of the statute—such as "force", "intimidation" and "procuring"—meaningless but it would provide an easy device to circumvent a criminal statute. I must adhere to my former interpretation.

Were I able to accept the limitations laid down in the Laudani case, I would then lean to the thought that the decision should not govern here. That decision does not limit the statute to cases where the "kick back" is made only for the employer's benefit. It limits the Statutes to instances where the employee "gives or cedes a portion of his contractual wage to or in favor of or at the instance of the employer or one acting for or on behalf of the employer" [134 F.2d 849]. It can logically, and I believe uncontradictorily, be said that Bird was acting "at the instance of" and "on behalf of" the employer.

Demurrer overruled and motion to quash denied.